UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS


| | | |
|---|---|---|
| ARKADIY POTIYEVSKIY, | ) | |
| VADYM KUTOVOY, | ) | |
| DENIS NAZAROV | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No: 24-cv-02612 |
| | ) | |
| PRYMOR, INC., | ) | |
| LILLY TOMA | ) | **JURY DEMANDED** |
| | ) | |
| Defendant. | ) | |


## <u>AMENDED CLASS ACTION COMPLAINT</u>


Julia Bikbova, Attorney for Plaintiffs
Bikbova Law Offices, P.C.
666 Dundee Road, Suite 708
Northbrook, IL 60062
(847) 730-1800
julia@bikbovalaw.com
ARDC# 6291400

1

Table of Contents

I.    NATURE OF THE CASE ........................................................................................... 3

II.    PARTIES ................................................................................................................. 4

III.    JURISDICTION AND VENUE ................................................................................... 5

IV.    RELEVANT STATUTES AND REGULATIONS ......................................................... 6

V.    STATEMENT OF FACTS ........................................................................................ 9

VI.    CLASS ALLEGATIONS ......................................................................................... 18

VII.    COUNT I: VIOLATIONS OF THE WAGES AND FAIR LABOR STANDARDS
ACT ...................................................................................................................... 21

VIII.    COUNT II: VIOLATIONS OF THE ILLINOIS WAGE PAYMENT AND
COLLECTION ACT, 820 ILCS 115/ – AGAINST ALL DEFENDANT ...................... 24

IX.    JURY DEMAND ................................................................................................... 25

X.    PRAYER FOR RELIEF .......................................................................................... 25

Plaintiffs, Arkadiy Potiyevskiy, Vadym Kutovoy, and Denis Nazarov, individually and on behalf of all other similarly situated current and former employees of Prymor, Inc., by their attorneys, bring their claims as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, Fair Labor Standard Act, 29 U.S.C. 201 et Seq. ("FLSA") and The Illinois Wage Payment and Collection Act, 820 ILCS § 115/ et Seq. ("IWPCA") against Prymor, Inc., and Lilly Toma (collectively referred to as "Defendants"), and allege, upon personal belief as to himself and his own acts, and as for all other matters upon information and belief, and based upon the investigation made by his counsel, as follows:

## I.    NATURE OF THE CASE

1. Plaintiffs worked as truck drivers for Defendant Company Prymor, Inc. (hereinafter "Prymor"), referred to as "Corporate Defendant". Throughout their employment, they were misclassified as independent contractors, and consistently underpaid. Defendants made deductions from Plaintiffs' paychecks, which they did not consent to and were not alerted to beforehand.

2. By doing so, Defendant Company – and the Individual Defendant who controlled it and directed the policies of misclassification of drivers and deductions – violated multiple provisions of the Illinois Wage Payment and Collections Act, 820 ILCS § 115/ as well as the Federal Labor Standards Act, 29 U.S. Code § 206.

3. Plaintiffs bring this action on a class basis as to all causes of action and bases for relief, on behalf of all similarly situated drivers who worked or work at Defendant company or any related (sister, parent, subsidiary, predecessor, successor) company. The violations experienced by Plaintiffs were not discrete occurrences, but constituted a business model

3

for Prymor. The vast majority (if not all) of the truck drivers who worked or work for said company were or are misclassified, underpaid, and subjected to illicit deductions.

## II.    PARTIES

4.  Plaintiff Arkadiy Potiyevskiy is a citizen of Pennsylvania and worked as a truck driver in Illinois, compensated on a per load basis (30% of the gross receipts the employer would contract for with its customers for delivery or a haul of each load) as a non-exempt employee for Defendant Company in the state of Illinois, during the applicable statute of limitations period, and at all relevant times was a full time Illinois employee within the meaning of the IWPCA, 820 ILCS § 115/2, and the Defendant company's employee within the meaning of FLSA, 29 U.S. Code § 203(e)(1).

5.  Plaintiff Vadym Kurovoy is a citizen of Florida and worked as a truck driver in Illinois, compensated on a per load basis (30% of the gross receipts the employer would contract for with its customers for delivery or a haul of each load) as a non-exempt employee for Defendant Company in the state of Illinois, during the applicable statute of limitations period, and at all relevant times was a full time Illinois employee within the meaning of the IWPCA, 820 ILCS § 115/2, and the Defendant company's employee within the meaning of FLSA, 29 U.S. Code § 203(e)(1).

6.  Plaintiff Denis Nazarov is a citizen of Illinois and worked as a truck driver in Illinois, compensated on a per load basis (30% of the gross receipts the employer would contract for with its customers for delivery or a haul of each load) as a non-exempt employee for Defendant Company in the state of Illinois, during the applicable statute of limitations period, and at all relevant times was a full time Illinois employee within the meaning of

4

the IWPCA, 820 ILCS § 115/2, and the Defendant company's employee within the meaning of FLSA, 29 U.S. Code § 203(e)(1).

7. Plaintiffs bring this case on behalf of themself and others who currently work, and who previously worked as truck drivers for Defendant Company at any time during the relevant statute of limitations preceding the filing of the original complaint (hereinafter "Violation Period").

8. At all relevant times hereto, Defendant Prymor, Inc. has been an Illinois corporation engaged in transportation and delivery business in Illinois and throughout the United States. Prymor conducts business in Illinois, and operates facilities in Illinois. Its principal place of business is 142 Toulon Drive, Buffalo Grove, IL 60069. Defendant Prymor has at all relevant times been an "employer" of Plaintiffs and other similarly situated truck drivers of Defendant Company within the meaning of the IWPCA, 820 ILCS § 115/2, and within the meaning of FLSA, 29 U.S. Code § 203(e)(1).

9. Defendant Lilly Toma ("Defendant Toma") is a citizen of the State of Illinois, and on information and belief, is the owner, registered agent, President, and executive of Prymor and has been its incorporator and founder from its inception through the present day. Defendant Toma was and is Prymor's key decision maker and its actual executive, who has had and exercised key decision powers with respect to payment of compensation to truck drivers working for the defendant company, the misclassification of drivers as independent contractors, and deductions made from drivers' compensation. As such, at all relevant times Defendant Toma has been an "employer" of Plaintiffs within the meaning of the IWPCA, 820 ILCS § 115/13 and within the meaning of FLSA, 29 U.S. Code §

5

203(e)(1). Defendant Toma caused or otherwise knowingly permitted Prymor to violate the FLSA and IWPCA.

### III. JURISDICTION AND VENUE

10. This court has personal jurisdiction over Plaintiffs and the class he seeks to represent because the named Plaintiffs Potiyevskiy, Nazarov, and Kutovoy and the putative class members worked in the State of Illinois, including this judicial district, when employed by the Defendant Company, and because the named Plaintiff Nazarov is a citizen of Illinois.

11. This Court has personal jurisdiction over the Corporate Defendant because the Corporate Defendant has its principal places of business in the State of Illinois, including this judicial district, and their conduct in the State of Illinois, including this judicial district, underlies all claims in this suit. The Individual Defendant is also a citizen of Illinois and lives in this judicial district.

12. This Court has subject matter jurisdiction over the instant claims pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2) as this matter is a civil action in which minimal diversity exists, the Plaintiffs' claims exceed $28,161.00 , the matter in controversy exceeds the sum or value of $5,000,000 on class basis/in an aggregate, exclusive of interest and costs, and there are at least 300 putative class members.

13. At least one Plaintiff is diverse from at least one Defendant: Mr. Potiyevskyi is a citizen of Pennsylvania, while all Defendants are citizens of Illinois. Mrs. Toma is a citizen of Illinois.

14. Some members of a putative class of plaintiffs are citizens of a State different from any defendant. At least two thirds of putative class members are citizens of states other than

Illinois. Notwithstanding their citizenship, the Plaintiffs and putative class members worked for the Defendant Company in Illinois.

15. Venue is proper in this District pursuant to 28 U.S.C§ 1391(b)(2) because a substantial part of the events or omissions which gave rise to IWPCA and FLSA violations occurred in the Northern District of Illinois.

## IV.    RELEVANT STATUTES AND REGULATIONS

16. The Illinois Wage Payment and Collection Act (820 ILCS 115/) protects Illinois workers from misclassification, underpayment of wages and compensation, unauthorized deductions, and untimely payment of earned compensation. Just as other Illinois wage laws, the IWPCA is a public interest law.

17. Under Section 2 of the IWPCA, "For all employees, other than separated employees, "wages" shall be defined as any compensation owed an employee by an employer pursuant to an employment contract or agreement between the 2 parties, whether the amount is determined on a time, task, piece, or any other basis of calculation." 820 ILCS 115/2.

18. Under Section 3 of the IWPCA, "Every employer shall be required, at least semi-monthly, to pay every employee all wages earned during the semi-monthly pay period." 820 ILCS 115/3.

19. Under Section 4 of the IWPCA, "All wages earned by any employee during a semi-monthly or bi-weekly pay period shall be paid to such employee not later than 13 days after the end of the pay period in which such wages were earned. All wages earned by any employee during a weekly pay period shall be paid not later than 7 days after the end of the weekly pay period in which the wages were earned. All wages paid on a daily basis shall be paid

7

insofar as possible on the same day as the wages were earned, or not later in any event than 24 hours after the day on which the wages were earned." 820 ILCS 115/4.

20. Under Section 5 of the IWPCA, "Every employer shall pay the final compensation of separated employees in full, at the time of separation, if possible, but in no case later than the next regularly scheduled payday for such employee." 820 ILCS 115/5.

21. Under Section 9 of the IWPCA, "Except as hereinafter provided, deductions by employers from wages or final compensation are prohibited unless such deductions are (1) required by law; (2) to the benefit of the employee; (3) in response to a valid wage assignment or wage deduction order; (4) made with the express written consent of the employee, given freely at the time the deduction is made; (5) made by a municipality with a population of 500,000 or more . . . or (6) made by a housing authority in a municipality with a population of 500,000 or more..." 820 ILCS 115/9.

22. Under Section 9.5 of the IWPCA, "An employer shall reimburse an employee for all necessary expenditures or losses incurred by the employee within the employee's scope of employment and directly related to services performed for the employer. As used in this Section, "necessary expenditures" means all reasonable expenditures or losses required of the employee in the discharge of employment duties and that inure to the primary benefit of the employer."

23. Under Section 10 of the IWPCA, "Employers shall notify employees, at the time of hiring, of the rate of pay and of the time and place of payment. Whenever possible, such notification shall be in writing and shall be acknowledged by both parties. Employers shall also notify employees of any changes in the arrangements, specified above, prior to the time of change." 820 ILCS 115/10.

24. Under Section 13 of the IWPCA, "In addition to an individual who is deemed to be an employer pursuant to Section 2 of this Act, any officers of a corporation or agents of an employer who knowingly permit such employer to violate the provisions of this Act shall be deemed to be the employers of the employees of the corporation." 820 ILCS 115/13.

25. Under Section 14(a) of the IWPCA, "Any employee not timely paid wages, final compensation, or wage supplements by his or her employer as required by this Act shall be entitled to recover through a claim filed with the Department of Labor or in a civil action, but not both, the amount of any such underpayments and damages of 2% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid. In a civil action, such employee shall also recover costs and all reasonable attorney's fees. 820 ILCS 115/14.

26. The Fair Labor Standards establishes minimum wage, overtime pay, recordkeeping, and youth employment standards affecting employees in the private sector and in Federal, State, and local governments.

27. Under 29 U.S. Code § 206, "Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at the following rates: (1)except as otherwise provided in this section, not less than— […] $7.25 an hour […] 29 U.S.C. § 206.

### V.  STATEMENT OF FACTS

28. During the time of Plaintiff Potiyevskiy's employment with the Defendant Company, he worked as a truck driver delivering goods across state lines.

29. Mr. Potiyevskiy worked for Prymor as a truck driver for about 11 months, between January 19, 2023 and December 22, 2023. He was hired by Prymor to work for Prymor and drove a truck with Prymor branding and its DOT Motor Carrier authority displayed.

30. Arkadiy Potiyevskiy learned of the truck driver position at Defendant Company through another driver at a gas station.

31. On or about the third week of January of 2023, Defendant Toma conducted an over-the-phone interview with Mr. Potiyevskiy.

32. During Mr. Potiyevskiy's interview, Defendant Toma told him that he would be driving a company truck that Prymor would provide, that he could not work for any other trucking company but Prymor, and that this would be a full-time commitment on his part.

33. Defendant Toma said that Mr. Potiyevsky would be paid on a per-load basis, 30% of gross receipts of Prymor for each load that he would haul. Prymor would also pay $120 layover; meaning that if a layover (unload and/or wait time) exceeds the customary wait and load/unload time - two hours, then any layover would be paid for at a rate of $120 per day/per layover).

34. He was also told that the terms of employment dictate that he must regularly report to Prymor dispatchers to take their instructions as to which loads to haul, where, which routes to take, and that he would have to comply with the Prymor's strict time constraints for deliveries and other instructions, including to be in constant communication and reporting to Prymor staff and office in Illinois.

35. Defendant Toma assured Plaintiff Potiyevskiy that she always paid her drivers in full and on time.

36. Mr. Potiyevskiy accepted the offer. He did not execute any Employment or an Independent Contractor Agreement. He was provided Company Employee Policy which he was asked to sign and he did so at hiring, via electronically submitted document that Lilly Toma sent to him. Whenever Mr. Potiyevskiy requested from Lilly Toma and from other staff at Prymor to provide him with a copy of an agreement that they contended he was violating, they never provided any such agreement or otherwise refused to identify what that agreement was and when it was executed. Whatever documents he signed by electronic submission at hiring, he was not given a copy of what he signed or may have signed.

37. Throughout the course of his employment, Plaintiff Potiyevskiy was underpaid for his work because deductions were applied to his pay. He was not aware of them and has not consented to any deductions. The deductions, in total, were in excess of $13,805.00.

38. For example, corporate defendant deducted $1620.00 in total for "Acc Insurance" and $1,900.00 in total for "safety support", whereby the increment deductions were made from some paychecks. Mr. Potiyevskiy was also stripped off his earned pay by way of a deduction of $8,100.00 for "cargo insurance claim", as well as other various and multiple deductions, such as $200.00 for "DVIR", $150.00 for "other", and $80.00 for "driver expenses". Some deductions were made from time to time, but from almost every paycheck one or more deductions were applied by the Defendant company to Mr. Potiyevskiy's pay.

39. Additionally, Mr. Potiyevskiy was illegally charged an "escrow" or "deposit" of $1,500.00, which Defendant deducted from his pay upon the beginning of his employment (deductions of $250 per each statement). While the company eventually returned the said withheld funds, it did so only after Mr. Potiyevsky terminated his employment. These funds

constitute promised and earned compensation that was withheld in violation of IWPCA for nearly a year since it was earned.

40. Further, Mr. Potiyevskiy was not paid for all the hauls he has carried for Defendant Company and Defendant Company failed to pay him the minimum wage as prescribed by FLSA. For instance, per Settlement statement #8511, from the time period between 10/02/2023 and 10/04/2023, having de facto earned $412.50, Mr. Potiyevskiy only received $27.50.

41. Mr. Potiyevskiy was not paid $900 that he earned and was due to him for hauling a load from Tacoma, WA to Fargo, ND (in excess of 1450 miles) and was not paid for two days of layover. The company simply said they could not pay him because he was "late". He was thus unpaid $1140.00 that was promised to him and which he earned. Mr. Potiyevsky spent 11 hours hauling this load each day for two days, having began on June 23d and delivered on June 26, 2023, plus two hours for loading and two hours for unloading, excluding the layover time which ended on June 28, 2023.

42. Similarly, he carried a load from Trenton, NJ to Grand Forks, ND (in excess of 1500 miles) and was unpaid $900 plus the $480 for four days of layover. He was thus unpaid $1,380 that was promised to him and which he earned. To haul this load, Mr.Potiyevskiy also spent 11 hours driving each day of the two day of the delivery and had spent four days of layover, unpaid.

43. In addition, the company refused to pay the Referral Bonus ($500 for each referral) which he earned and which was promised to him when he was interviewed by Defendant Toma. Mr. Potiyevskiy referred and helped the Defendant company recruit two professional CDL

drivers. Thus, the Defendant company failed to pay $1000 that was promised and which he earned.

44. In addition, the Company failed to reimburse Mr. Potiyevskiy for certain out-of-pocket costs such as phone and data charges that he had to have to be able to perform his work for Defendant company, which total approximately $1000.

45. In total, Plaintiff Potiyevskiy was unpaid or underpaid by at least **$18,325.00** during his 1 months of employment with Prymor.

46. Plaintiff Potiyevskiy knows that all decisions regarding deductions from his pay, as well as other decisions as to his compensation were made personally by Ms Toma. Mr. Potiyesvkiy personally discussed the unlawful deductions and refusal to compensate him in full with Defendant Toma.

47. Since July 2023 when the statutory monthly 5% interest per IWPCA began to accrue, the interest of the unpaid per-load compensation to date is in excess of $5,000.00. This figure continues to rise each month subsequent to the filing of this Complaint.

48. During the time of Denis Nazarov's employment with the Defendant Company, he worked as a truck driver delivering goods across state lines.

49. Mr. Nazarov worked for Prymor as a truck driver for about 5 months, between June and November of 2020. He was hired by Lily Toma to work for Prymor and drove a truck with Prymor branding and its DOT Motor Carrier authority displayed.

50. Mr. Nazarov was paid on a per-load basis, 30% of gross receipts of Prymor for each load that he would haul. Prymor would have also had to pay $120 layover; meaning that if a layover (unload and/or wait time) exceeds the customary wait and load/unload time - two hours, then any layover would be paid for at a rate of $120 per day/per layover).

51. He was also told by Prymor staff that the terms of employment dictate that he must regularly report to Prymor dispatchers to take their instructions as to which loads to haul, where, which routes to take, and that he would have to comply with the Prymor's strict time constraints for deliveries and other instructions, including to be in constant communication and reporting to Prymor staff and office in Illinois.

52. Mr. Nazarov accepted the offer. He did not execute any Employment or an Independent Contractor Agreement.

53. Since Denis Nazarov resides in Illinois, he was often dispatched to haul loads through Illinois or to and from Illinois, such as, for example, a load Lackawanna, NY to Chicago, IL on June 30th to July 1st, according to Rate Confirmation # 16053 by Go!Transportation to Prymor, Inc. , or from Jamestown, NY to Plano, IL on July 17-20, according to Rate Confirmation # GQ-20686 from FAK, Inc. to Prymor, Inc.

54. Throughout the course of his employment, Plaintiff Nazarov was underpaid for his work because deductions were applied to his pay. He was not aware of them and has not consented to any deductions. The deductions, in total, were in excess of $4,355.67.

55. For example, corporate defendant deducted $1500 for "Escrow", which was never repaid to him; the same deductions on weekly basis as for other drivers such as $50 "Safety Support" and $30 for "Acc Insurance", $500 "late delivery", $36 "parking ticket and fee", whereby the increment deductions were made from some paychecks. Some deductions were made from time to time, but from almost all paychecks one or more deductions were applied by the Defendant company to Mr. Nazarov' pay.

56. Further, Mr. Nazarov was not paid for all the hauls he has carried for Defendant Company and Defendant Company failed to pay him the minimum wage as prescribed by FLSA. For

14

instance, according to the bills of lading for the loads that Mr. Nazarov hauled, from the time period between 08/24/2020 and 08/26/2020, Defendant company did not pay the wages due for the loads that he hauled, and did not pay the layover neither.

57. In addition, the Company failed to reimburse Mr. Nazarov for certain out-of-pocket costs such as phone and data charges that he had to have to be able to perform his work for Defendant company, which total approximately $400.

58. In total, Plaintiff Nazarov was unpaid or underpaid by at least **$5,355.67** during his 5months of employment with Prymor.

59. Plaintiff Nazarov knows that all decisions regarding deductions from his pay, as well as other decisions as to his compensation were made personally by Ms. Toma. Mr. Nazarov personally discussed the unlawful deductions and refusal to compensate him in full with Defendant Toma.

60. Since June 2024 the statutory monthly 5% interest per IWPCA on the unpaid compensation to date is in excess of $5,000.00. This figure continues to rise each month subsequent to the filing of this Complaint.

61. During the time of Plaintiff Kutovoy's employment with the Defendant Company, he worked as a truck driver delivering goods across state lines.

62. Mr. Kutovoy worked for Prymor as a truck driver for about 7 months, between May and December of, 2023.  He was hired by Prymor to work for Prymor and drove a truck with Prymor branding and its DOT Motor Carrier authority displayed.

63. During the job interview, Mr. Kutovoy was told that he would be driving a company truck that Prymor would provide, that he could not work for any other trucking company but Prymor, and that this would be a full-time commitment on his part.

15

64. The terms of promised compensation were that he would be paid on a per-load basis, 30% of gross receipts of Prymor for each load that he would haul. Prymor would also pay $120 layover; meaning that if a layover (unload and/or wait time) exceeds the customary wait and load/unload time - two hours, then any layover would be paid for at a rate of $120 per day/per layover).

65. He was also told that the terms of employment dictate that he must regularly report to Prymor dispatchers to take their instructions as to which loads to haul, where, which routes to take, and that he would have to comply with the Prymor's strict time constraints for deliveries and other instructions, including to be in constant communication and reporting to Prymor staff and office in Illinois.

66. Mr. Kutovoy accepted the offer. He did not execute any Employment or an Independent Contractor Agreement.

67. Throughout the course of his employment, Plaintiff Kutovoy was underpaid for his work because deductions were applied to his pay. He was not aware of them and has not consented to any deductions. The deductions, in total, were in excess of $2,413.

68. For example, corporate defendant deducted $1,110.00 in total for "Acc Insurance" and $700.00 in total for "safety support", whereby the increment deductions were made from some paychecks. Mr. Kutovoy was also stripped off his earned pay by way of a deduction of $350.00 for "Driver loan", while it was entirely unknown and untold to him what these deductions for "driver's loan" were for while Plaintiff Kutovoy did not borrow any money from Prymor, Inc.; as well as a deduction of $50.00 for "ELD", and $203.00 for "fuel".

69. Additionally, Mr. Kutovoy was illegally charged an "escrow" or "deposit" of $1,500.00, which Defendant deducted from his pay upon the beginning of his employment (deductions

16

of $250 per each statement). While the company eventually returned the said withheld funds, it did so only after Mr. Kutovoy terminated his employment. These funds constitute promised and earned compensation that was withheld in violation of IWPCA for nearly 8 months since it was earned.

70. Further, Mr. Kutovoy was not paid for all layovers that were due to him. A few times when the equipment was broken and required repair or maintenance, he would spend days waiting for the repairs be complete but Defendant company did not pay the layovers for those days despite being obligated to, and did not pay at least a minimum wage where the federal law required. While he was paid for some layovers, he was not paid a full $120 per day fee and was not paid for at least 4 other layovers

71. In addition, the Company failed to reimburse Mr. Kutovoy for certain out-of-pocket costs such as phone and data charges that he had to have to be able to perform his work for Defendant company, which total approximately $1000.

72. In total, Plaintiff Kutovoy was unpaid or underpaid by at least **$4,480.00** during his 7 months of employment with Prymor.

73. Plaintiff Kutovoy knows that all decisions regarding deductions from his pay, as well as other decisions as to his compensation were made personally by Ms. Toma. Mr. Kutovoy personally discussed the unlawful deductions and refusal to compensate him in full with Defendant Toma.

74. Since July 2023 when the statutory monthly 5% interest per IWPCA began to accrue, the interest of the unpaid per-load compensation to date is in excess of $3,500.00. This figure continues to rise each month subsequent to the filing of this Complaint.

**Defendant Company's control over Plaintiff's employment**

75. Defendant Lilly Toma and other personnel of Defendant Company managed Plaintiffs and others' similarly situated drivers' work for Defendant Company, including the number of hours worked, the loads hauled, and the tasks performed by Plaintiffs and others similarly situated truck drivers.

76. Defendant Toma and other personnel of the Defendant Company exerted full control over Plaintiffs's workdays and working conditions. They dictated, controlled and ratified the wages paid, hours worked, tasks set, and all related employee compensation policies and practices for all drivers working for Prymor.

77. Defendant company also required Plaintiffs and all other similarly situated truck drivers to submit to formally apply for employment, provided information on prior employment, submit to mandatory drug testing, and to report to company dispatchers and safety managers in Defendant's Illinois facilities. These were mandatory conditions of employment, which Plaintiffs had to fulfill in order to work for the Defendant Company.

78. Plaintiffs and members of the putative class were required to come to Defendant company's office in Illinois for pick up of the equipment and company policies of the Defendant Company, meet key personnel and take possession of equipment.

79. Defendant Toma, as well as other members of a management team at Prymor, required Plaintiffs and other similarly situated drivers to use the Defendant company's vehicles in performance of their duties, which were registered in Illinois and owned by Illinois-registered company and displayed "Prymor" signs on the vehicle siding; this company branding is solely owned and managed by Defendant Prymor and individual defendant Toma.

18

80. As a result, Plaintiffs and similarly situated drivers exclusively drove and operated Prymor's and Prymor's vehicles and exclusively under this company's DOT Motor Carrier Authority. The requirement of displaying Defendant Company's signs, branding and DOT MC numbers was equally imposed on all drivers as a condition of employment.

81. At least approximately 10% of the cargo that Defendant Company required its drivers to transport was cargo deliveries to and from Defendant's customers located in Illinois. In furtherance of their transport duties and work for the Defendant Company, Plaintiffs and other similarly situated truck drivers spent approximately thirty percent of their time or more commuting through the State of Illinois, regardless of whether Defendant's customers were in Illinois or not.

82. All of the instructions that the Plaintiffs and putative class members would receive came from Defendant company's dispatchers and management team in Illinois.

83. Defendant Company controlled every aspect of their drivers', including Plaintiffs' work. Such control included, but was not limited to the following:

    a. Defendant Company required Plaintiffs and other similarly situated drivers to comply with instructions dictated by written and unwritten policies, procedures, and directives regarding Plaintiff' and other similarly situated drivers' duties.

    b. Plaintiffs, as well as other similarly situated drivers, were required to report to or contact dispatchers employed by Defendant Company in Illinois, at a pre-set time determined by Defendant Company, at which time Plaintiffs and other similarly situated drivers are provided with delivery assignments.

    c. Defendant Company's management instructed Plaintiffs and other similarly situated drivers which loads to pick up, the location of the loads/goods to be

19

delivered, as well as the time frames for loading onto the equipment. The Plaintiffs and other similarly situated drivers had and have no discretion with respect to which loads they would pick up or deliver or when. Additionally, the Defendant Company dictated and dictate the time by which the delivery must be made.

d.  Defendant Company employed and employs managers who had supervisory responsibility over Plaintiffs and other similarly situated drivers, and who could and did assign and direct their work.

e.  Plaintiffs and other similarly situated drivers were required to purchase and carry GPS devices, which allowed the Defendant company's personnel to track the drivers throughout the day or night. Defendant company's dispatchers and supervisors also communicated with Plaintiffs and similarly situated drivers while they were driving via telephone to convey instructions and otherwise oversee the drivers.

f.  The defendant company required Plaintiffs and other similarly situated drivers to undergo background checks and drug testing.

g.  The Defendant company utilized a variety of insurance from an insurer of their choice, such as non-trucking liability insurance, occupational accident insurance, property damage and cargo insurance. While the drivers, including the Plaintiffs, had no say in which insurance policies were chosen, they also had the related expenses deducted from their pay.

h.  If the Plaintiffs or other similarly situated drivers wished to take time off, the Defendant company required them to give timely advance notice, with the Plaintiffs

20

and other similarly situated drivers disciplined or terminated for failure to provide such notice.

 i. Defendant company's personnel advised Plaintiffs and other similarly situated drivers that their refusal to drive a load that had been assigned to them would result in an immediate termination of their employment.

84. As part of their strict control over Plaintiffs' work, individual defendant required that the Plaintiffs and putative class members submit all bills of lading, logbooks, and other required paperwork to the Defendant company's head office in Illinois.

85. At no time during their employment were the Plaintiffs and other similarly situated drivers allowed to have their own customers nor did they ever have their own customers. Further, they could not choose and did not choose their own routes for delivery of cargo, could not and did not receive compensation or otherwise exchanged payment for their delivery other than being compensated by the Defendant company, and could not and did not negotiate any matters or bargains with any customers or brokers.

86. Plaintiffs and other similarly situated truck drivers shared similar job titles, followed the same policies and practices, performed similar duties, and as a result of Defendant company's common scheme of misclassification and applications of unlawful deductions, were similarly subject to exploitation and denied the promised and earned compensation.

**Liability of individual defendant Toma**

87. Defendant Toma had knowledge of the mutual assent between the Plaintiffs and Defendant company to compensate Plaintiffs for all of his work because it was Defendant Toma who interviewed some Plaintiffs, offered employment, and promised to compensate in full and on load-based rate (30% of the gross receipts of Prymor for each load hauled). In short, it

was Toma or her employees who entered into oral agreements with the Plaintiffs, on behalf of Prymor, for employment as interstate truck drivers.

88. Defendant Toma similarly had knowledge of mutual assent between Defendant company and other drivers that came to work for Defendant company and were interviewed by her or Defendant company's personnel responsible for hiring.

89. Individual defendant Toma further had knowledge of Defendant company's systematically misclassifying their drivers as independent contractors because she was the one to mastermind the misclassification scheme and implemented it.

90. Defendant Toma knowingly permitted or otherwise caused Defendant company to wrongfully deny the payment of compensation to Plaintiffs and putative class members by actively and affirmatively directing the Defendant company's personnel to deny the earned and promised compensation, apply unlawful deductions to drivers' pay and deny the drivers' request to pay the compensation for the last loads that the drivers would haul prior to termination of their employment.

91. Individual defendant established policies for Defendant company which violated the IWPCA and FLSA: (1) at the beginning of running her transportation services enterprise, on or about July of 2018, when Prymor was founded, Toma devised a scheme to misclassify the truck drivers as Independent Contractors and consequently, (2) underpay the truck drivers their earned compensation by applying deductions to the compensation of drivers; and (3) forced drivers and other personnel to doctor or otherwise falsify the logbooks.

92. Defendant Toma implemented her exploitative scheme in full knowledge that most of the truck drivers they hired would take the job offered, not complain about underpayment of wages, and not seek any recourse in court or otherwise with government authorities. Toma

targeted drivers who were and are immigrants, with limited English language skills and lack of ability to learn and understand the wage and hour laws in Illinois and the United States in general, so as to ensure a consistent power imbalance, which the individual defendant used to her advantage and profit.

93. Instead of running an honest business, defendant Toma designed the above-described scheme of deductions and wage withholdings to take money from hard-working, vulnerable employees who could not or would not fight back.

94. Defendant company's practices, as set up and implemented by the individual defendant, violated multiple provisions of the Illinois Wage Payment and Collection Act and FLSA. In addition – but not a subject matter of the instant Complaint – Individual defendant set up their enterprises as massive schemes to violate nearly a dozen of other state and federal laws, such as U.S. Department of Transportation regulations limiting the time the drivers can operate their trucks on the road and proscribing minimum required rest time, Illinois laws on worker's compensation insurance, federal and state laws concerning payroll taxes, state laws requirement of unemployment insurance contributions, Affordable Care Act, and more.

95. As a result of Defendant company's unlawful practices, as set up and implemented by Individual defendant, the Defendant company and the individual defendant, as the sole shareholder of the Defendant company, Prymor, profited immensely. She benefited from reduced labor and payroll costs by making illegal deductions and otherwise withholding pay from the Plaintiffs and similarly situated drivers.

96. As a result of the individual defendant's improper and willful actions causing the Corporate defendant to fail to pay the Plaintiffs and others similarly situated in accordance with the

23

requirements of the IWPCA and FLSA, Plaintiffs and others similarly situated putative class members suffered lost wages and other actual damages.

## VI. CLASS ALLEGATIONS

97. Plaintiffs brings these claims for relief on their own and as a class action pursuant to Fed R. Civ. P. 23. The class is defined as:

*"All persons who have worked for Defendant company as truck drivers and truck driver trainees in Illinois or otherwise have driven Defendant company's, their predecessors', successors', subsidiaries' and/or affiliated company's trucks at any time during the relevant statutory period, and who entered into an Independent Contractor agreement individually or on behalf of another entity, oral or written, and personally provided freight cargo transportation services pursuant to that Agreement for Defendant company and who have not been classified as employees of Defendant company and against whom violations under FSLA were committed in that at least minimum wage was not paid during some periods of work".* (Count I).

*"All persons who have worked for Defendant company as truck drivers and truck driver trainees in Illinois or otherwise have driven Defendant company's, their predecessors', successors', subsidiaries' and/or affiliated company's trucks at any time during the relevant statutory period, and personally provided freight cargo transportation services, and who entered into an Independent Contractor agreement individually or on behalf of another entity, oral or written, and personally provided freight cargo transportation services pursuant to that Agreement for Defendant company and who have not been classified as employees*

24

*of Defendant company and against whom violations under IWPCA were committed in that the Defendant company made unauthorized and unjustified deductions from their compensation and did not pay all earned and promised compensation as mandated by IWPCA."* (Count II).

98. This action is properly maintainable as a class action under Rules 23(a) and 23(b) because:

a. The class or subclasses of plaintiffs, estimated 300 drivers, is so numerous that joinder of all members is impracticable.

b. There are common questions of law and fact as to whether Defendant company improperly misclassified the drivers as independent contractors in violation of Section 2 of IWPCA and Minimum Wage provisions of FLSA, as the drivers were and are in fact covered by the IWPCA and FLSA; whether the drivers are entitled to recover the amounts deducted by the Company from their wages in violation of Section 9 of IWPCA and Section 206 of FLSA, as well as any unpaid but earned compensation; whether defendant did not reimburse the drivers for work-related expenses in accordance with Section 9.5 of IWPCA; whether the proposed class members are entitled to statutory interest and attorney's fees and costs under Section 14 of IWPCA, and whether individual defendant is liable under 29 U.S.C. 201 et Seq. (Count I) and under IWPCA (Count II).

c. All claims arise from the same practice or course of conduct of the Corporate and Individual defendant and are based on the same theory, and therefore the claims are typical.

d. Each driver has the same potential claim and types of damages, and these common questions of law and fact predominate over any possible questions affecting only

individual members. As determination of liability under IWPCA for misclassification, failure to pay for all work done, and unlawful deductions, as well as under 29 U.S.C. 201 et Seq. for failure to pay out minimum wage does not require individualized and fact intensive inquiry; and thus, the proposed class is sufficiently cohesive to warrant adjudication by representation.

e.  The named Plaintiffs and their attorney will adequately protect the interests of the entire class.

f.  Class treatment in this particular case is the only appropriate means for the fair and efficient adjudication of the controversy because of the length of the dispute, the intimidation and retaliation threats and actions by Individual defendant, the amount of individual damages and the prohibitive costs of individual suits. Further, the putative class members' interests in individually controlling the prosecution of separate actions is minimal, the potential individual recoveries in this case are small enough to warrant class action treatment and this forum is the only appropriate forum for such an action because one named Plaintiff, as well as some other drivers-members of the putative class, reside in this District and the unlawful practices alleged by Plaintiffs occurred within Illinois and which affected the rights of all members of the putative class who worked for the Defendant company during the statutory period of time.

**VII. COUNT I: VIOLATIONS OF FAIR LABOR STANDARD ACT, 29 U.S.C. 201 et Seq., Fair Labor Standard Act, 29 U.S.C. 201 et Seq.**

99. Plaintiffs re-allege and incorporate paragraphs 1 through 98 above as and for paragraph 99 of this Count I.

100.     At any and all times relevant hereto, Defendant Prymor was and is an "enterprise in commerce" within the meaning of Sec. 3 of the FLSA, 29 U.S.C. 203.

101.     At all times relevant hereto Defendant Prymor was the employer of Plaintiff Potiyevskiy and class members he seeks to represent, within the meaning of Section 203 of FLSA.

102.     At all times relevant hereto Defendant Toma was the employer of Plaintiff Potiyevskiy and putative class members he seeks to represent, within the meaning of Section 203 of FLSA as this individual defendant acted directly in the interests of her respectively owned and/or operated or managed entity, Defendant Prymor, which was the employer in relation to employee-Plaintiff Potiyevskiy and other similarly situated putative class members.

103.     At all times relevant hereto Plaintiff Potiyevskiy and the class he seeks to represent were and/or are employees of Defendant Prymor within the meaning of Section 203(e)(1) of FLSA.

104.     During the course of his employment, Plaintiff Potiyevskiy and the class he seeks to represent were truck drivers who were denied wages or compensation for some days of the workweeks or work periods entirely.

105.     Specifically, Plaintiff Potiyevskiy hauled loads from Deposit, NY to Schaghticoke, NY, beginning on October 2, 2023 and arriving on October 4, 2023. He hauled over night, having spent at least 13 hours to haul, including fuel stops/break, loading and unloading. He similarly hauled loads from Utica, NY to Montgomery, NY from October 3, 2023 to

27

October 4, 2023. Defendant Prymor applied certain deductions to his pay, which resulted in Mr. Potiyevskiy being compensated only $27.50 for this work whereby he worked at least 30 hours but was not paid even a minimum wage.

106.     Mr. Potiyevskiy was not paid for any work and time when he hauled a load from Tacoma, WA to Fargo, ND in June of 2023 and was not paid for two days of layover. Mr. Potiyevsky spent 22 hours hauling this load over the course of two days, plus two hours for loading and two hours for unloading. Considering the 8 hours of layover/wait time each day for two days, Mr. Potiyevskiy worked between June 23d and June 28th, 2023, for at least 42 hours but was not paid at all. He certainly was not paid at least a minimum wage mandated by FLSA.

107.     Similarly, during a week later in 2023 as he carried a load from Trenton, NJ to Grand Forks, ND, he was not paid for any work and time to haul the load, load and unload, and was not paid for 4 days of layovers, which constituted at least 58 hours. He certainly was not paid at least a minimum wage mandated by FLSA.

108.     As a result, he was unpaid at least $942.50 for a minimum of 130 hours of work, excluding accrued interest and other penalties under FLSA.

109.     As a result, Mr. Potiyevskiy was not paid at least a minimum wage for his work for Defendant Prymor, which the federal law mandated in 2023 as $7.25 per hour. In total, he suffered actual damages under FLSA in the amount of $942.50, excluding penalties and interest.

110.     The statutory interest 5% per month continues to accrue on all unpaid minimum wages and the Defendants are liable for $942.50 liquidated damages under FLSA in addition to the unpaid wages and statutory interest.

28

111.     At all times relevant thereto Plaintiff Potiyevskiy believes there were other similarly situated former employees-truck drivers working for Defendant Prymor who were unpaid for some of the work that they performed to the extent of not being paid at least a minimum wage mandated by Federal Law.

112.     Defendants Prymor and Toma violated Section 206 of FLSA by failing to pay at least a minimum wage to Plaintiff Potiyevskiy and committed similar violations against putative class members he seeks to represent.

113.     As a direct and proximate result thereof, there is due to Plaintiff Potiyevskiy and putative class members back wages and penalties – liquidated damages and statutory damages - pursuant to Section 216 of FLSA.

114.     Plaintiff Potiyevskiy and class he seeks to represent are entitled to recover double the amount of unpaid wages due to them, as well as all attorney's fees and costs, pursuant to Section 216 of FLSA.

115.     At all times relevant hereto Defendant Prymor, Inc was the employer of Plaintiff Nazarov and class members he seeks to represent, within the meaning of Section 203(d) of FLSA.

116.     At all times relevant hereto Defendant Toma was the employer of Plaintiff Nazarov and putative class members he seeks to represent, within the meaning of Section 203(d) of FLSA as this individual defendant acted directly in the interests of her respectively owned and/or operated or managed entity Prymor, Inc., which was the employer in relation to employee-Plaintiff Nazarov and other similarly situated putative class members.

117.     At all times relevant hereto Plaintiff Nazarov and the class he seeks to represent were and/or are employees of Defendant Prymor, Inc. within the meaning of Section 203(e)(1) of FLSA.

118.     During the course of his employment, Plaintiff Nazarov and the class he seeks to represent were truck drivers who were denied wages or compensation for some days of the workweeks or work periods entirely.

119.     Specifically, Plaintiff Nazarov hauled loads from Skokie, Illinois to Lexington, Tennessee, beginning on July 22 and arriving on July 23, 2020. He hauled overnight, having spent at least 13 hours hauling, including fuel stops/break, loading and unloading. Defendant Prymor applied certain deductions to his pay, which resulted in Mr. Nazarov being compensated only $15.00 for this work whereby he worked at least 13 hours but was not paid even a minimum wage.

120.     As a result, he was unpaid at least $94.25, excluding accrued interest and other penalties under FLSA.

121.     In addition, Plaintiff Nazarov hauled loads on August 26, 2020, from Findlay, Ohio to Kuztown, Pennsylvania, which was at least 700 miles. This trip took him at least 13 hours to complete. He was supposed to be paid, according to the employment agreement, at least $300 for this trip. But he was not paid at all.

122.     One day prior to this trip, he was forced by dispatchers for Prymor to take a layover, which he did for the entire 24 hours. He was supposed to be paid at least $120 but he was denied said compensation.

123.     As a result, Mr. Nazarov was not paid at least a minimum wage for his work for Defendant Prymor, which the federal law mandated in 2020 as $7.25 per hour. In total, he

30

suffered actual damages under FLSA in the amount of $268.25, excluding penalties and interest.

124.     Defendants are liable for $268.25 liquidated damages under FLSA in addition to the unpaid wages and statutory interest.

125.     At all times relevant thereto Plaintiff Nazarov believes there were other similarly situated former employees-truck drivers working for Defendant Prymor who were unpaid for some of the work that they performed to the extent of not being paid at least a minimum wage mandated by Federal Law.

126.     Defendants Prymor, Inc. and Lily Toma violated Section 206 of FLSA by failing to pay at least a minimum wage to Plaintiff Nazarov and committed similar violations against putative class members he seeks to represent.

127.     As a direct and proximate result thereof, there is due to Plaintiff Nazarov and putative class members back wages and penalties pursuant to Section 216 of FLSA.

128.     Plaintiff Nazarov and class he seeks to represent are entitled to recover double the amount of unpaid wages due to them, as well as all attorney's fees and costs, pursuant to Section 216 of FLSA.

129.     At all times relevant hereto Defendant Prymor, Inc. was the employer of Plaintiff Kutovoy and class members he seeks to represent, within the meaning of Section 203(d) of FLSA.

130.     At all times relevant hereto Defendant Toma was the employer of Plaintiff Kutovoy and putative class members he seeks to represent, within the meaning of Section 203(d) of FLSA as this individual defendant acted directly in the interests of her respectively owned

and/or operated or managed entity Prymor, Inc., which was the employer in relation to employee-Plaintiff Kutovoy and other similarly situated putative class members.

131.    At all times relevant hereto Plaintiff Kutovoy and the class he seeks to represent were and/or are employees of Defendant Prymor, Inc. within the meaning of Section 203(e)(1) of FLSA.

132.    During the course of his employment, Plaintiff Kutovoy and the class he seeks to represent were truck drivers who were denied wages or compensation for some days of the workweeks or work periods entirely when he was not paid the layover for the entire day or days of waiting for the equipment repair be complete or the load be dispatched for pick up, on at least 4 fall days.

133.    As a result, he was unpaid at least $232.00, excluding accrued interest and other penalties under FLSA.

134.    During the said four trip, he was forced by dispatchers for Prymor to take layovers lasting for 24 hours or longer, which he did for the entire 24 hours. He was supposed to be paid at least $120 per layover, or at least a minimum wage for the full day of work but he was denied said compensation.

135.    As a result, Mr. Kutovoy was not paid at least a minimum wage for his work for Defendant Prymor, which the federal law mandated in 2020 as $7.25 per hour. In total, he suffered actual damages under FLSA in the amount of $232.00, excluding penalties and interest.

136.    Defendants are liable for $232.00 liquidated damages under FLSA in addition to the unpaid wages and statutory interest.

137.     At all times relevant thereto Plaintiff Kutovoy believes there were other similarly situated former employees-truck drivers working for Defendant Prymor who were unpaid for some of the work that they performed to the extent of not being paid at least a minimum wage mandated by Federal Law.

138.     Defendants Prymor, Inc. and Lily Toma violated Section 206 of FLSA by failing to pay at least a minimum wage to Plaintiff Kutovoy and committed similar violations against putative class members he seeks to represent.

139.     As a direct and proximate result thereof, there is due to Plaintiff Kutovoy and putative class members back wages and penalties pursuant to Section 216 of FLSA.

140.     Plaintiff Kutovoy and class he seeks to represent are entitled to recover double the amount of unpaid wages due to them, as well as all attorney's fees and costs, pursuant to Section 216 of FLSA.

## VIII.  COUNT II: VIOLATION OF ILLINOIS WAGE PAYMENT AND COLLECTION ACT, 820CS §115/

141.     Plaintiffs re-allege and incorporate paragraphs 1 through 98 above as and for paragraph 141 of this Count II.

142.     Corporate Defendant is an "employer" within the meaning of Section 115/2 of IWPCA.

143.     Individual Defendant is an "employer" within the meaning of Section 115/13 of the IWPCA.

144.     Defendant violated Section 115/2 of the IWPCA by misclassifying Plaintiff and those similarly situated.

145.     Defendant violated Section 115/3 and Section 115/4 of the IWPCA by failing to pay Plaintiff and those similarly situated their wages in a timely manner.

146.     Defendant violated Section 115/5 of the IWPCA by failing to pay Plaintiff his final compensation in full and in a timely manner.

147.     Defendant violated Section 115/9 of the IWPCA by making unauthorized deductions from the paychecks of Plaintiff and those similarly situated. These deductions were not required by law, did not benefit Plaintiff, were not made in response to a valid wage assignment order, and were not made with the express written consent of employees.

148.     Defendant violated Section 115/9.5 of the IWPCA for failing to reimburse Mr. Potiyevskiy and other employees-drivers who worked for corporate defendant since 2019 for all necessary expenditures or losses incurred by the employees-drivers within the corporate defendant's scope of employment and directly related to services performed for the Defendant company.

149.     Defendants violated Section 115/10 of the IWPCA by failing to notify Plaintiff and those similarly situated of their true rate of pay in writing or orally at any point of hiring and employment.

150.     The total amount Mr. Potiyevskiy's damages for the 11 months of his employment with Defendant company is approximately $18,325.00 without interest accrued under the IWPCA, and excluding attorney's fees and costs.

151.     The total amount Mr. Nazarov's damages for the 5 months of his employment with Defendant company is approximately $5,356.00 without interest accrued under the IWPCA, and excluding attorney's fees and costs.

152.     The total amount Mr. Kutovoy's damages for the 7 months of his employment with Defendant company is approximately $4,480.00 without interest accrued under the IWPCA, and excluding attorney's fees and costs.

153.     Individual defendant Toma is liable for the corporate Defendant' violations of the IWPCA, pursuant to Section 115/13 of the IWPCA because she intentionally or knowingly caused the Corporate defendant to violate IWPCA.

154.     Under Section 115/14 of the IWPCA, both Defendants are liable to Plaintiff and members of the putative class for all interest accrued, and for all attorney's fees and costs incurred and to be incurred as a result of prosecution of the instant Complaint.

## IX. JURY DEMAND

PLAINTIFFS REQUEST A TRIAL BY JURY ON ALL CLAIMS.

## X. PRAYER FOR RELIEF

WHEREFORE, Plaintiff pray that this Honorable Court:

a.   Certifies the class and appoint Plaintiffs and Plaintiffs' counsel to represent the class;

b.   Finds that the Corporate defendant violated the Illinois Wage Payment and Collection Act by misclassifying Plaintiffs and other drivers-members of the class in violation of 820 ILCS § 115/2 and further violated Sections § 115/3, § 115/4, § 115/5, § 115/9, § 115/9.5, and § 115/10 of IWPCA;

c.   Finds that the Corporate defendant violated the Fair Labor Standard Act, 29 U.S.C. 201 et Seq.;

d.   Holds Corporate defendant liable for all damages caused to Named Plaintiffs and members of the class in an amount in excess of $5,000,000.00;

e.  Imposes penalties and interest pursuant to Section 14 of IWPCA and imposes penalties by way of liquidated damages and interest under FLSA;

f.  Awards all attorney's fees and costs in this litigation to Plaintiffs pursuant to Section 14 of IWPCA, as well as pursuant to FLSA;

g.  Finds that Individual defendant Toma is personally liable for the Corporate defendant' violations of IWPCA under Section 13 of IWPCA, as well as under FLSA;

h.  Holds Individual defendant Toma liable for damages caused to Plaintiff and members of the putative class in excess of $5,000,000.00.

i.  Grants such other relief as this Court deems appropriate.

Respectfully submitted,

By:   /s/ Julia Bikbova                
Julia Bikbova, Plaintiffs' Attorney

Julia Bikbova
Bikbova Law Offices, P.C.
666 Dundee Road, Suite 708
Northbrook, IL 60062
(847) 730-1800
julia@bikbovalaw.com
ARDC# 6291400